IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Johnson D. Koola, | ) | Civil Action No. 2:19-cv-429-RMG |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Ditech Financial LLC; U.S. Bank Trust N.A., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

This matter is before the Court on Appellant Johnson D. Koola's appeal from the Final Orders of the United States Bankruptcy Court for the District of South Carolina (Dkt. Nos. 1, 3) denying confirmation of Appellant's plans, denying Appellant a new trial, and dismissing Appellant's case. For the reasons set forth below, the Court affirms the orders of the bankruptcy court and dismisses the appeal.

I. **Background**[1]

On February 20, 2004 Johnson D. Koola ("Appellant" or "Debtor") executed a fixed rate note (the "Note") for $136,192.00 with Countrywide Home Loans, Inc. On the same day, Koola executed a mortgage (the "Mortgage") as security, which encumbered his principal residence in Mount Pleasant, South Carolina ("Principal Residence"). The "mortgagee" was Mortgage Electronic Registration Systems, Inc. ("MERS") and the lender was Countrywide Home Loans, Inc. Federal National Mortgage Association ("Fannie Mae") became the owner of the debt in March 2004.

---

[1] As discussed further in the Discussion section where relevant, the Court finds that none of the Bankruptcy Court's findings of fact are "clearly erroneous," and instead are supported by the record, and therefore the Court affirms the bankruptcy court's findings of facts.

-1-

On March 20, 2009, Koola filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code, listing his Principal Residence on his schedules and indicating that Countrywide Home Loans, Inc. had a mortgage loan on that property. An order discharging debt was issued in the Chapter 7 case, and the case was closed on July 13, 2009.[2]

After the discharge order was entered, Koola defaulted on his monthly mortgage payment in November 2009. (Dkt. Nos. 16 at 8; 17 at 12.) On July 27, 2010, BAC Home Loans Servicing, LP, formerly known as Countrywide Home Loans Servicing, LP, ("BAC Home Loans") filed a foreclosure action on the Mortgage against Koola in state court with the Case Number 2010-CP-10-6060 (the "Foreclosure Case"). The Foreclosure Case remains pending.[3]

The Mortgage ultimately was reassigned and sold multiple times: on August 27, 2010, MERs assigned the mortgage to BAC Home Loans.[4] (Dkt. No. 1 at 11.) Later, BAC Home Loans merged with Bank of America, and the caption of the Foreclosure action was amended in October 2011 to reflect the change.[5] The right to service the mortgage was transferred again to Green Tree Servicing, LLC, which was reflected in a letter sent to Koola. (Dkt. Nos. 1 at 12 – 13; 22-1 at 24, 26; 22-2 at 14 – 16; 22-4 at 40 – 42.) On August 31, 2015, Green Tree merged with DT Holdings and Ditech Mortgage Corp., and the surviving entity was Ditech, an Appellee here. (*Id.*) Finally,

---

[2] The case was reopened in 2012 for Debtor to file an amended schedule listing a claim against Bank of America. The Court, however, entered an order discharging the trustee and again closed the case.

[3] The state court dismissed Koola's counterclaims, which was upheld on appeal. Koola also attempted to remove the case to federal court but the case was remanded. The Fourth Circuit dismissed appeal of the remand and the Supreme Court denied *certiorari*.

[4] MERS later also assigned the mortgage to Green Tree servicing, as requested by Bank of America, in May 2013. (Dkt. No. 22-2.) Regardless, the record reflects Green Tree being assigned the mortgage.

[5] Bank of America had previously sent a letter to Koola informing him that Fannie Mae was his "creditor to whom the debt is owned" while Bank of America was the loan servicer. (Dkt. No. 1 at 28; 4-2 at 198; 22-1 at 15.)

on July 25, 2018, Fannie Mae sold the mortgage loan to U.S. Bank, an Appellee here. (Dkt. No. 4-2 at 178.)

This case was initiated *pro se* on March 20, 2018 under Chapter 13 of the Bankruptcy Code, which stayed the Foreclosure Case. In his bankruptcy case, Koola disclosed that the monthly payments for his mortgage was $842.71 and that he owed $87,180.63 in mortgage payments. On May 7, 2018, Koola objected to the mortgage claim Ditech filed in this case, alleging Ditech lacked standing. Ditech filed an amended claim, stating that it intended to proceed as enforcing a lost instrument and that Koola's plan could not be confirmed as it attempted to modify the terms of the Note and Mortgage. (Dkt. No. 4-1 at 126 – 127.) The bankruptcy court denied Koola's objection. After the bankruptcy court denied Koola's objection, Koola moved for a new trial. Prior to ruling on the motion, U.S. Bank filed an amended proof of claim. The bankruptcy court denied the motion for a new trial and found that U.S. Bank had standing to pursue enforcement of the mortgage. After the motion was denied, Koola filed a second amended claim, attempting to modify the repayment terms of the mortgage under 11 U.S.C. § 1322(c)(2). The bankruptcy court denied confirmation of this second plan as well, finding that § 1322(c)(2) did not apply, and dismissed Koola's Chapter 13 case. This appeal followed. (Dkt. No. 4-3 at 260.)

## II.  Legal Standard

This Court has jurisdiction to hear appeals from final orders of the bankruptcy court. 28 U.S.C. § 158; *see, e.g.*, *In re Kirkland*, 600 F.3d 310, 314 (4th Cir. 2010) (noting district court's "capacity as a bankruptcy appellate court"). The standard of review of a bankruptcy appeal by a district court is the same as when a court of appeals reviews a district court proceeding. *See* 28 U.S.C. § 158(c)(2). Accordingly, the bankruptcy court's findings of fact are reviewed under a

"clearly erroneous" standard. Fed. R. Bankr. P. 8013.[6] A finding of fact is clearly erroneous when the entire record demonstrates convincingly to the reviewing court that "a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *United States v. Hall*, 664 F.3d 456, 462 (4th Cir. 2012). A bankruptcy court's conclusions of law are subject to *de novo* review. *In re Biondo*, 180 F.3d 126, 130 (4th Cir. 1999); *In re K & L Lakeland, Inc.*, 128 F.3d 203, 206 (4th Cir. 1997).

## III. Discussion

Koola raises the following issues on appeal: (1) whether the bankruptcy court improperly failed to apply 11 U.S.C. § 1322(c)(2) when assessing Koola's plan; (2) whether the bankruptcy court incorrectly determined that the creditors had standing to object to the plan; (3) whether the bankruptcy court improperly dismissed Koola's Chapter 13 case without assessing whether the interest of both the debtors and creditors were served and whether there was bad faith and, finally; (4) whether the bankruptcy court inaccurate determined that no 11 U.S.C. § 588 defenses were applicable when dismissing Koola's case. (Dkt. No. 16 at 5.) Appellee U.S. Bank filed a brief arguing that the Court should affirm the bankruptcy court's decision, and Koola filed a reply. (Dkt. Nos. 17, 20.) The Court also granted U.S. Bank leave to file a surreply. (Dkt. No. 26.) In addition to reviewing the bankruptcy court's orders and the record on appeal, the Court also reviewed the supplemental record submitted by the Parties. (Dkt. Nos. 1, 3, 4, 10, 21, 22.) Having reviewed all materials, the Court finds no errors of law or clearly erroneous findings of fact,[7] and the Court therefore affirms the orders of the bankruptcy court.

---

[6] The advisory committee notes state that findings of a bankruptcy judge should be given the same weight as afforded a district judge under Fed. R. Civ. P. 52.

[7] To the contrary, the bankruptcy court's findings of fact are firmly supported by the record.

### A. Application of § 1322(c)(2)

Koola first argues that the bankruptcy court failed to apply 11 U.S.C. § 1322(c)(2), a provision which would have permitted Koola to modify the repayment terms for his Mortgage, and instead applied 11 U.S.C. § 1322(b)(2), which prohibits modifying the terms of a claim secured only by the debtor's principal residence. (Dkt. No. 16 at 7.) However, § 1322(c)(2) provides an exception to the no-modification provisions of U.S.C. § 1322(b)(2), and states that:

> [I]n a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

11 U.S.C. § 1322(c)(2).

At issue here is the phrase "last payment on the original payment schedule" in § 1322(c)(2). Specifically, Koola argues that while the loan originally had a last payment date of March 1, 2034 under Paragraph 3 of the Note (Dkt. No. 4-1 at 59), when he went into default on November 1, 2009, the loan was accelerated under the terms of the Note such that the new contractual due date for loan was November 1, 2009. (Dkt. Nos. 4-1 at 59 –60; 16 at 7 – 8.) On March 20, 2018, Koola filed a Chapter 13 Bankruptcy Petition, which included a plan with a last payment due on March 21, 2020. (Dkt. 4-2 at 227, 234.) Koola therefore argues that his proposed plan complies with the terms of § 1322(c)(2) as his last "last payment on the original payment schedule" after his default was November 1, 2009, was due "before the date" of the "final payment under the plan," which is March 21, 2020. (Dkt. No. 16 at 8.)

However, Koola's argument is without merit and misinterprets the phrase "last payment on the original payment schedule." Instead of November 1, 2009, the accelerated due date of his mortgage loan, his original payment schedule set his last payment date as March 1, 2034. (Dkt. No. 4-1 at 59.) Koola argues that the accelerated due date based on default constitutes the new

-5-

last payment date, however, this is contradicted by the plain language of the statute, which looks to the "*original* payment schedule" when determining whether a claim secured by an interest in a principal residence can be modified. § 1322(c)(2)(emphasis added). Additionally, multiple recent decisions by bankruptcy courts addressing almost identical arguments have come to the same, well-reasoned, conclusion. *See In re Bernadin*, No. AP 18-281, 2019 WL 5556505, at *16 (Bankr. E.D. Pa. Oct. 28, 2019) ("The language 'original payment schedule' is plain and clear. It can only refer to the last payment due under the original note rather than to the date the accelerated debt is due. Otherwise, the words 'original payment schedule' would be rendered meaningless."); *In re Goione*, 595 B.R. 477, 486 (Bankr. D.N.J. 2019) (same); *In re Barbone*, No. 5-13-AP-00271-JJT, 2014 WL 4976822, at *1 (Bankr. M.D. Pa. Oct. 3, 2014) ("This is the key to determining eligibility under the § 1322(c)(2) exception to the antimodification rule. While the mortgage attached to the Complaint includes a term that allows for an acceleration of the debt on default, that does not alter the fact that the last payment of the original payment schedule is not due until 2021[.]"); *In re Anderson*, 458 B.R. 494, 502–03 (Bankr. E.D. Wis. 2011) ("The mortgage was accelerated by default and the foreclosure judgment creates a new due date, but it does not change the original date."). Koola's default therefore did not change the last payment date on the *original* payment schedule.

Koola's cited cases do not affect this conclusion. To begin, the sole Fourth Circuit decision cited by Koola does not address the term "last payment on the original payment schedule," and instead only holds that a debtor cannot bifurcate an unsecured home mortgage loan into separate secured and unsecured claims. *In re Witt*, 113 F.3d 508, 509 (4th Cir. 1997). Further, that holding was ultimately overruled by *Hurlburt v. Black*, 925 F.3d 154 (4th Cir. 2019). Most notably, the issue of "last payment" was undisputed by the Parties in *Witt*, as "[b]oth sides agree[d]" that

that the last payment on the note was due in October 1999, while the bankruptcy plan concluded in April 2000. *In re Witt*, 113 F.3d at 510, 510 n.1. Other cases cited by Koola, such as *In re Hubbell*, 496 B.R. 784 (Bankr. E.D.N.C. 2013) and *In re Draper*, No. 15-34127-KRH, 2015 WL 7264669 (Bankr. E.D. Va. Nov. 17, 2015), suffer from the same deficiency, with the last payment on the loan in those cases undisputedly coming due before the last payment under the bankruptcy plan. Finally, Koola's last two cited cases, including one from the bankruptcy court in this district, *In re Brown*, 428 B.R. 672 (Bankr. D.S.C. 2010) and *In re Griffin*, 489 B.R. 638 (Bankr. D. Md. 2013), deal with reverse mortgages, and as such the notes in those cases did not have "original payment schedule," and as such did not address the core issue here. *See Brown*, 428 B.R. at 675 ("Under the terms of Debtor's Note and Mortgage, no payment schedule is provided."); *Griffin*, 489 B.R. at 639 ("The Note does not incorporate a normal monthly payment schedule of principal and interest."). Here, to the contrary, Koola's note has an "original payment schedule" and while the default changed the due date of the principal, it did not adjust the "last payment" on his "original payment schedule," which was March 1, 2034. Therefore, the Court affirms the bankruptcy court's holding that § 1322(c)(2) does not apply and the mortgage cannot be modified under § 1322(b)(2).[8] (Dkt. No. 1 at 6 – 8.)

---

[8] As the bankruptcy court also properly held, Koola's plan would not be confirmable under § 1322(c)(2) regardless as the provision requires the modified payment to comply with the requirements of 11 U.S.C. § 1325(a)(5), which requires any modified payment schedule to have payments in "equal monthly amounts." § 1325(a)(5)(B)(iii). Here, to the contrary, Koola proposes paying up to $800 per month, which will not cover the entire owed principal, and then a final "jumbo" "balloon payment," covering the remaining claim. (Dkt. No. 4-2 at 227, 235.) This balloon payment, which would far exceed $800, is not a monthly payment in an "equal" amount, and therefore is not confirmable under § 1322(c)(2). *See Anderson*, 458 B.R. at 503 ("In order to obtain confirmation, the Andersons' plan must provide for equal monthly payments to the secured creditor over the life of the plan until the lien claim is satisfied. Such treatment cannot then allow for a balloon payment in the final month, as proposed by the debtors.").

**B.      Standing**

Koola next argues that Ditech and U.S. Bank, the appellees here, both lack standing to enforce the Mortgage and Note and therefore cannot object to his bankruptcy plan. (Dkt. No. 16 at 24 – 35.) Koola's arguments regarding Ditech's standing focus on its failure to produce the "original note and mortgage" to demonstrate standing. (*Id.* at 25.) However, as the bankruptcy court properly held, Ditech may enforce the note under South Carolina's law regarding lost instruments, which states:

> The owner of an instrument which is lost, whether by destruction, theft or otherwise, may maintain an action in his own name and recover from any party liable thereon upon due proof of his ownership, the facts which prevent his production of the instrument and its terms. The court may require security indemnifying the defendant against loss by reason of further claims on the instrument.

S.C. Code Ann. § 36-3-804.[9] Turning to the bankruptcy court's findings of fact, the court found that Fannie Mae was the owner of the Debt at the time of filing, a conclusion supported by the record in this case, including testimony by a Ditech employee and a letter sent by Bank of America prior to July 2011 indicating that the owner of the debt is "FNMA," Fannie Mae. (Dkt. No. 1 at 28; 4-2 at 198; 22-1 at 15.) Indeed, Koola filed a motion with the bankruptcy court acknowledging that Fannie Mae was the owner of the mortgage and included as an exhibit a letter he sent to Fannie Mae on July 11, 2013 stating that "I understand that Fannie Mae currently owns my mortgage." (Dkt. No. 22-1 at 6, 18.) Further, the record evidence demonstrates that the Note itself was inadvertently lost when Bank of America's counsel at the time, the Korn Law Firm, ceased operations and destroyed all its records. (Dkt. Nos. 4-2 at 71 – 72; 199 – 225; 22-3 at 1.) The

---

[9] The bankruptcy court applied S.C. Code Ann. § 36-3-804, the statute regarding lost instruments in effect at the time the mortgage was entered into, which has since been replaced by S.C. Code Ann. § 36-3-309. On appeal, no Party objects to the application of § 36-3-804.

bankruptcy court's finding of fact was therefore not "clearly erroneous," and instead the application of S.C. Code Ann. § 36-3-804 is supported by the record as the appellees demonstrated that Fannie Mae is the owner of the instrument and the "facts which prevent [the] production" of the actual note. Fannie Mae, therefore, at the time of the filing of this bankruptcy action, was a proper party with standing.

Further, Ditech, as servicer of the note has the right to enforce the note. It is well-settled that "[a] servicer is a party in interest and has standing to move for relief from stay and to file proofs of claim on the owner's behalf." *In re McFadden*, 471 B.R. 136, 176 (Bankr. D.S.C. 2012). *See also Bank of Am., N.A. v. Draper*, 405 S.C. 214, 221, 746 S.E.2d 478, 481 (Ct. App. 2013) (same). The case contains extensive evidence, as found by the bankruptcy court, that Bank of America transferred servicing of the note to Green Tree, which changed its name through merger to Ditech in August 2015. (Dkt. Nos. 1 at 12 – 13; 22-1 at 24, 26; 22-2 at 14 – 16; 22-4 at 40 – 42.) Ditech, therefore, as the servicer of the loan, had standing to object to Koola's bankruptcy plan before the bankruptcy court.

Koola also argues that the assignment of the servicing of the mortgage did not permit Ditech to enforce the underlying note, stating S.C. Code Ann. § 36-3-301 only allows enforcement by a "holder of the instrument" or another "in possession of the instrument." (Dkt. No. 16 at 30.) Koola again seems to attempt to avoid enforcement of his Mortgage based on the fact that the Note was lost, regardless of the fact that South Carolina law explicitly permits enforcement of lost notes. Further, Koola does not cite S.C. Code Ann. § 36-3-301 in its entirety, which also permits enforcement by one "not in possession of the instrument who is entitled to enforce the instrument

pursuant to Section 36-3-309...[.]"[10] S.C. Code Ann. § 36-3-301. Therefore, as Ditech may enforce the lost note under the provisions of South Carolina law, S.C. Code Ann. § 36-3-301 permits enforcement of the mortgage here.

Furthermore, appellees here are not attempting to collect on the underlying debt, and instead are attempting to foreclose on a mortgage. Regardless of the fact that the personal debt has been discharged, the mortgage can still be enforced under South Carolina law through foreclosure. *See Ducker v. Standard Supply Co.*, 280 S.C. 157, 159, 311 S.E.2d 728, 730 (1984) ("A discharge of the personal liability of a debt or judgment does not affect the lien securing that debt or judgment."); *Bank of Am., N.A. v. Draper*, 405 S.C. 214, 220–21, 746 S.E.2d 478, 481 (Ct. App. 2013) ("A mortgage and a note are separate securities for the same debt, and a mortgagee who has a note and a mortgage to secure a debt has the option to either bring an action on the note or to pursue a foreclosure action.") (citations omitted). Therefore, regardless of Koola's arguments on the transfer of the Note and the ability to collect the underlying debt, the bankruptcy court properly determined that Ditech is a real party in interest here as it can enforce the Mortgage through foreclosure.

Finally, the bankruptcy court properly determined that U.S. Bank is a real party in interest with standing to enforce the mortgage and object to Koola's bankruptcy plan as there is evidence in the record that Fannie Mae sold and transferred the mortgage to U.S. Bank on July 25, 2018. (Dkt. No. 4-2 at 94, 178 – 179, 186; 4-3 at 52 – 53, 59.) Further, the bankruptcy court properly

---

[10] Section 36-3-309 contains the current provisions for enforcing a lost note, under which Ditech would be permitted to enforce the note based on the record before the bankruptcy court. Further, as the Court already held, the note is enforceable under the provision in effect at the time, S.C. Code Ann. § 36-3-804.

held that U.S. Bank is similarly permitted to enforce the mortgage based on the lost note provisions contained in S.C. Code Ann. § 36-3-804. (Dkt. No. 4-3 at 43 n.15.)

Therefore, the Court affirms the holdings of the bankruptcy court that Ditech and U.S. Bank are parties in interest, have standing as in this bankruptcy case and have standing to object to Koola's bankruptcy plans.

### C. Dismissal

Koola next appeals the bankruptcy court's order dismissing his case. (Dkt. Nos. 3 at 4 – 13; 16 at 9.) Two provisions of the bankruptcy code are relevant here. First, 11 U.S.C. § 1307 provides that a case may be dismissed:

> (c) [...] on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—
>
> [...] (5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;

(*Id.*) Similarly, 11 U.S.C. § 305 provides that:

> (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if--(1) the interests of creditors and the debtor would be better served by such dismissal or suspension[;]

To begin, Koola is incorrect that dismissal must be requested by a creditor, and instead 11 U.S.C. § 305 makes clear that it must only be done "after notice and a hearing." As is demonstrated by the bankruptcy court's order here and the record in this case, the bankruptcy court provided notice and held a hearing on dismissal. (Dkt. Nos. 3 at 7; 10-1 at 84 – 86, 89.) Further, the bankruptcy court had already denied as unconfirmable three bankruptcy plans, including denial of the November 19, 2018 proposed plan under § 1325(a)(5). (Dkt. No. 3 at 7.) Furthermore, it is clear

to this Court, as it was clear to the bankruptcy court, that Koola cannot propose a plan that is confirmable under Chapter 13.

Additionally, as the bankruptcy court properly explained, the Court should abstain under 11 U.S.C. § 305 as there no longer is a bankruptcy purpose in this case. The Court affirms the bankruptcy court's consideration of the factors contained in *In re Golf Course Mktg. Corp.*, No. CIV.A. 95-76646-W, 1996 WL 33340787, at *4 (Bankr. D.S.C. June 16, 1996) ("[I]n determining whether to dismiss an involuntary Chapter 7 proceeding under § 305, the court should consider fairness, priorities in distribution, capacity for dealing with frauds and preferences, speed, economy, freedom from litigation, the importance of a discharge to the debtor, a pending state proceeding, the small number of remaining creditors, the necessary complexity of the bankruptcy process, efficiency and economy of administration.").[11] While the Court finds that the bankruptcy court properly applied each factor, the Court highlights the following important holdings: first, it is clear, after multiple unconfirmable plans have been denied by the bankruptcy court, the case lacks any bankruptcy purpose and instead only acts as a bar to foreclosure proceedings in state court that have been pending since 2010. Second, the Court affirms the bankruptcy court's holding that it is in the interest of both the creditors and the debtor to have his state foreclosure defenses addressed by state courts with expertise in those matters and for the sole issue in this case, foreclosure on his primary residence, to proceed in state court so both the creditors' claims and the debtors arguments can be addressed. Finally, the Court finds that abstention would further

---

[11] The Court also finds the bankruptcy court's consideration of the factors in *In re Pennino*, 291 B.R. 842 (Bankr. W.D. Ark.), *aff'd*, 299 B.R. 536 (B.A.P. 8th Cir. 2003) appropriate. *Id.* at 844. ("In reviewing whether abstention is appropriate, courts look to a number of factors, including absence of bankruptcy purpose, state law proceedings, whether this is a two-party dispute, economy and efficiency of administration, the availability of another case or forum to protect the interest of the parties, alternative means of achieving equitable distribution of assets, and the purpose for which bankruptcy jurisdiction has been sought.")

fairness, efficiency and economy as permitting the bankruptcy case to proceed would only increase costs and cause delay for all parties and the issues present here can be more effectively addressed by the state courts.

### D. Defenses Under 11 U.S.C. § 558

Finally, Koola argues on appeal that the bankruptcy court failed to assess his defenses, as required by 11 U.S.C. § 558. (Dkt. No. 16 at 35.) However, this is incorrect, as the bankruptcy court properly assessed, and dismissed, each of Koola's defenses.

11 U.S.C. § 558 states that:

> The estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses. A waiver of any such defense by the debtor after the commencement of the case does not bind the estate.

First, the bankruptcy court determined that the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641(g) did not apply to disallow the mortgage claim held by U.S. Bank. (Dkt. No. 3 at 17 – 18.) As the bankruptcy court properly held, Koola's TILA claim cannot act as a bar to the mortgage claim as he cannot show detrimental reliance. *See Jaldin v. ReconTrust Co.*, 539 F. App'x 97, 103 (4th Cir. 2013) ("[The] TILA claims also fail because they made no showing of detrimental reliance. Detrimental reliance is an element of a TILA claim for actual damages.") (citations omitted); *O'Dell v. Deutsche Bank Nat. Tr. Co.*, No. 1:12-CV-985 JCC/IDD, 2013 WL 2389874, at *9 (E.D. Va. May 30, 2013) ("If a new creditor fails to make this written disclosure, a borrower may seek actual damages sustained so long as the borrower is able to show detrimental reliance on the faulty disclosure.").

Next, the bankruptcy court properly determined that Koola's statute of limitations defenses are inapplicable, and instead the twenty-year statute of limitations under South Carolina law applies. (Dkt. No. 1 at 29 – 30.) *See* S.C. Code Ann. § 15-3-520 ("Within twenty years: (a) an

action upon a bond or other contract in writing secured by a mortgage of real property[.]"). Koola's newly raised argument that joinder rules articulated by Federal Rule of Civil Procedure 17 acts as a statute of limitations precluding dismissal of this action is without merit, and instead is a rule of civil procedure regarding joinder that is inapplicable to the Court's statute of limitations analysis here. (Dkt. No. 20 at 26 –27.) Additionally, the provisions of S.C. Code Ann. § 36-3-108, addressing "demand notes," (*Id.* at 28 – 29), do not create any shorter statute of limitations here, and instead the bankruptcy court properly applied S.C. Code Ann. § 15-3-520.

Finally, to the extent Koola was appealing the bankruptcy court's failure to address his other defenses under 11 U.S.C. § 558, the Court affirms the bankruptcy court's factual findings and reasoning for dismissing Koola's additional defenses. (Dkt. No. 1 at 29 – 39.)

## IV. Conclusion

For the foregoing reasons, the Court **AFFIRMS** the Final Orders of the Bankruptcy Court and **DISMISSES** Appellant Johnson D. Koola's Appeal (Dkt. Nos. 1, 3).

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

December 26, 2019
Charleston, South Carolina